IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS THORNTON, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | C.A. NO.: 3:22-cv-02079-N | |
| § | | |
| THE UNIVERSITY OF TEXAS § | JURY DEMANDED | |
| SOUTHWESTERN MEDICAL § | | |
| CENTER, § | | |
| *Defendant*. § | | |
| § | | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Marcus Thornton (hereinafter referred to as "Plaintiff") in the above-referenced matter, complaining of and about Defendant The University of Texas Southwestern Medical Center (hereinafter referred to as "UTSMC" or "Defendant"), and for causes of action files this First Amended Complaint, showing to the Court the following:

### I. PARTIES

1. Plaintiff is an individual residing in Dallas, Dallas County, Texas. Plaintiff is a citizen of the United States and the State of Texas.

2. Defendant The University of Texas Southwestern Medical Center is a business that staffs administrators, and physicians, and also provides healthcare related services to patients at all levels of care from general doctors' visits to emergency room visits. UTSMC has operations in Dallas, Texas with its principal place of business in Dallas, Dallas County, Texas. It has made an

appearance in this lawsuit. It may be served with process by serving its President, Daniel Podolsky, at 5323 Harry Hines Blvd., Dallas, TX 75390.

## II. JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statute: Title VII of the Civil Rights Act of 1964 (as amended) (which is codified in 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)) (hereinafter referred to as "Title VII").

4. Venue is proper in the Northern District of Texas - Dallas Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## III. NATURE OF THE ACTION

5. This is an action brought pursuant to Title VII on the ground that Plaintiff was discriminated and retaliated against because of Plaintiff's Race (African-American), and in retaliation for his complaints of discrimination.

6. This is an action brought pursuant to Title VII to correct and recover for Defendant's unlawful racial discrimination, hostile work environment, retaliation, and to deter Defendant from continuing its unlawful and discriminatory employment practices.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On August 24, 2018, Plaintiff filed a dual Charge of Discrimination (Charge No. 460-2016-00727) with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and the Texas Workforce Commission (hereinafter referred to as the "TWC") against Defendant for race discrimination, hostile work environment and retaliation.

8. Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, received on June 21, 2022. Plaintiff files this lawsuit within ninety (90) days of receiving the Right to Sue notices.

2

*Plaintiff's First Amended Complaint*

Therefore, this lawsuit is timely filed.

## V. FACTS

9. Plaintiff Marcus Thornton (African American) has been employed by The University of Texas Southwestern Medical Center ("UT Southwestern" or "UTSW") as a Research Associate since June 15, 2015.

10. The University of Texas Southwestern Medical Center is a Medial Center that provides physician services and conducts medical research that regularly conducts business in Dallas, Texas.

11. Thornton was an exemplary employee with no disciplinary and performance issues until his unwarranted termination on November 13, 2017.

12. For over a year, Thornton filed several complaints against his manager, Ms. Norma Anderson (hereinafter "Ms. Anderson") (Caucasian) with management for the hostile work environment and discriminatory treatment he received. Specifically, on April 22, 2016, Thornton filed an internal complaint with the Director of the Center for Human Nutrition, Dr. Jay Horton (hereinafter "Dr. Horton"), regarding a hostile work environment.

13. On May 16, 2016, Thornton sent an email to Dr. Horton complaining that Ms. Anderson continued to harass him and continued to create a hostile work environment. Thornton went directly to Dr. Horton to make his internal complaints.

14. On June 22, 2016, Thornton complained to Dr. Horton again that he believed Ms. Anderson was continuing to harass him and discriminate against him in his evaluation appraisal. Specifically, Thornton disagreed with the scores he received and gave notice that he had been covering another employee, Young-Ah's (Asian) work. Thornton complained that Ms. Anderson's treatment was unfair, biased, and hostile because of his race.

15. Thereafter, Ms. Anderson went so far as to make a diagram on a white depicting Thornton as a black stick-figure with the caption "Why sad? No one loves him. Y u no hpy?"

16. In addition to the diagram, Ms. Anderson purposely hid Thornton's lab coat, continuously failed to order his supplies, and refused to release work assignments to him. In addition to this humiliation Ms. Anderson made defamatory comments about him to his colleagues including outside vendors.

17. Ms. Anderson would also make comments regarding the superior leadership of Adolf Hitler and how great Adolf Hitler was as a leader. Notably, for years UT Southwestern received multiple complaints against Ms. Anderson; yet, UT Southwestern has utterly failed to take any action to remedy Ms. Anderson's discriminatory and retaliatory actions.

18. In January 2017, Thornton escalated his previous complaints to UT Southwestern's Division of Equal Opportunity. In February 2017, Thornton reached out to Dr. Horton and complained that Dr. Horton would never respond, and Thornton told Dr. Horton that "I even stopped filing complaints because of you." Still, Thornton was unable to illicit any help from his Director, Dr. Horton (who was Ms. Anderson's supervisor).

19. In February 2017, Thornton filed a formal complaint with Human Resources regarding discrimination based on his race (African American). Thornton also filed a complaint with Aboubakrine Sow and Frank G. Merlino, the Senior Employee Relations Representatives. Majority of Thornton's initial complaints were emailed to Dr. Jay Horton. Defendant through their agents failed to investigate Thornton's complaints.

20. On or around June 2017, Thornton complained again to Dr. Horton that the injustices he had to endure in the lab and how they were contributing to an unhealthy overall collaboration in the lab. Thornton stated he was retaliated against for filing several grievances

against his superior, Ms. Anderson. Thornton's work environment became so hostile it started to affect his overall health and he believed the discrimination was based on his race because his non-African American counterparts were not treated in a similar fashion.

21. For years, Thornton endured harassment and discrimination—and for years, UT Southwestern failed to act or protect their employees. The environment became so stressful that Thornton was forced to take medical leave to seek treatment for his anxiety and depression.

22. On August 24, 2017, Thornton filed for FMLA and was approved for FMLA leave from August 15, 2017, through October 30, 2017. According to the FMLA paperwork that he was provided, Thornton was "required to present a fitness to return to work notice to be restored to employment."

23. Following Thornton's leave, he promptly informed UT Southwestern that he had not been released from his doctor to return to work, but he would return as soon as he received his medical clearance.

24. Despite being aware of Thornton's intent to return to work, and his need for accommodations upon his return, his requests were denied. On November 9, 2017, Thornton received a letter from Dr. Horton as "formal notification…to request administrative separation" of his employment due to his "unavailability to work."

25. The separation letter stated in part that "before [Dr. Horton] proceeded with the administrative separation of your employment, you have an opportunity to respond in writing if any of the aforementioned facts are incorrect…" (Id.) On November 10, 2017, Thornton promptly responded to Mr. Horton that he had a doctor's appointment and that he would be returning to work. On November 10, 2017, Dr. Horton responded to Thornton, "Marcus-thank-you for your response **but do not report to work at UT Southwestern until you receive an official**

5

*Plaintiff's First Amended Complaint*

**response** from our administration.

26. On November 13, 2017, waiting on an official response from UT, Thornton made a formal request for accommodation which was denied the same day by UT without engaging in the interactive process. Ultimately, the next day, on November 14, 2017, Thornton was terminated from his employment at UT Southwestern for "unavailability to work."

27. Ms. Anderson harbored a discriminatory animus towards Thornton's race because she (1) displayed racial tones in drawings and communications with Thornton; (2) denied Thornton assistance compared to non-African American employees; (3) excluded Thornton from lab equipment; and (4) undermined his work.

28. Dr. Horton's discriminatory and retaliatory intent was fueled by years of his complaints filed by Thornton that were filed directly with Dr. Horton. Even after Dr. Horton advised Thornton to stop filing complaints and "stay out the way," Dr. Horton had knowledge of Thornton's complaints of race discrimination. Moreover, Dr. Horton had direct knowledge of Thornton's intent to return to work on November 10, 2017, but denied Thornton the opportunity to return. UT Southwestern was content protecting its employees, specifically, Ms. Anderson and Dr. Horton from any future complaints from Mr. Thornton.

29. Mr. Thornton was terminated due to the discrimination he faced as an African American because he was treated differently and less favorably by Ms. Anderson and Dr. Horton than other similarly situated employees that were not African American. Thornton was the only employee in his department who was not allowed to return to work after presenting a "fitness-to-return notice;" and terminated for "unavailability."

30. Thornton, did in fact give notice on November 10, 2017, that he was available to return to work, but Dr. Horton told him to not return until UT Southwestern made an official

*Plaintiff's First Amended Complaint*

response. Under the same or similar circumstances, non-African American employees in his department have been allowed to return to work after presenting a "fitness-to-return notice;" and were not terminated under similar circumstances.

## VI. CAUSES OF ACTION
### COUNT 1
### TITLE VII RACE DISCRIMINATION

31. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

32. Plaintiff was qualified for his job, based on his performance reviews during his tenure.

33. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (African American).

34. Defendant has allowed non-African American employees to have time to obtain their "Return to Work Notice;" yet terminated Plaintiff for "unavailability" days after Plaintiff obtained and presented his "Return to Work Notice." Defendant also denied Plaintiff the opportunity to return to work on November 10, 2017, and stated that he could not return to campus until after an official response was made. Dr. Horton and Ms. Anderson conspired to terminate Plaintiff based on his race given that it was well known that both Dr. Horton and Ms. Anderson treated non-African Americans more favorably and did not terminate their employees under similar or same circumstances.

35. Defendants discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's race (African American), in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

36. Defendant could not have reasonably believed that racially motivated discrimination in Plaintiff's employment was proper at the time the alleged incidents took place in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

37. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard of the rights of Plaintiff — entitling Plaintiff to punitive damages.

## COUNT TWO
## TITLE VII RETALIATION

38. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

39. Plaintiff engaged in protected activity by filing multiple complaints of discrimination based on race and hostile work environment. Plaintiff filed multiple internal complaints that are considered protected activity under Title VII, the dates and basis for each complaint is as follows:

   a. **April 2016** – filed an internal complaint with Dr. Horton regarding a racially based hostile work environment fueled by Ms. Anderson.
   b. **May 2016** – filed an internal complaint with Dr. Horton regarding a racially based hostile work environment fueled by Ms. Anderson.
   c. **June 2016** – filed an internal complaint with Dr. Horton regarding a racially based hostile work environment fueled by Ms. Anderson.
   d. **January 2017** – escalated internal complaints about Ms. Anderson to UT Southwestern's Division of Equal Opportunity.
   e. **February 2017** – filed an internal complaint with Dr. Horton regarding a racially based hostile work environment fueled by Ms. Anderson, and complained that Dr. Horton was not responding or acting on his behalf as the Director and supervisor of Ms. Anderson.
   f. **June 2017** – filed an internal complaint with Dr. Horton regarding a racially based hostile work environment fueled by Ms. Anderson.
   g. **August 2017** – filed for FMLA and was approved for FMLA leave from August 15, 2017, through October 30, 2017.
   h. **November 10, 2017** – Thornton promptly responded to Mr. Horton that he had a

8

*Plaintiff's First Amended Complaint*

doctor's appointment and that he would be returning to work. On November 10, 2017, Dr. Horton responded to Thornton, "Marcus-thank-you for your response **but do not report to work at UT Southwestern until you receive an official response** from our administration.

40. Dr. Horton had knowledge of Thornton's internal complaints from 2016-2017 and was knowledgeable of Thornton's numerous complaints about Ms. Anderson. Mr. Thornton even indicated to HR that Dr. Horton failed to address the situation, or even respond. Dr. Horton had actual notice of Plaintiff's protected complaints.

41. Defendants intentionally retaliated against Plaintiff because of the complaints made to Defendants about the race discrimination, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a). Dr. Horton had knowledge that Plaintiff intended to return to work; Dr. Horton had knowledge of Plaintiff's numerous complaints about racially hostile work environment and ongoing disabling conditions.

42. The assertion that Plaintiff was terminated due to "unavailability" is a pretextual finding to cover up UT Southwestern's discriminatory and retaliatory actions towards Plaintiff.

43. Once Defendant concluded investigating Plaintiff's formal complaints, Plaintiff requested leave, and Defendant created the appearance that Plaintiff was not available. Plaintiff alleges Dr. Horton refused to address his concerns and did not communicate with Dr. Horton until he issued the Intent to Separate. Since the Intent to Separate came from Dr. Horton, who was a witness to the discriminatory actions by Ms. Anderson and failed to remedy the situation, it can be inferred that the fact that he filed the intent so quickly was related to the fact that Mr. Thornton had continuously made complaints about discrimination in the past.

44. Plaintiff was terminated for "unavailability" by Dr. Horton after Dr. Horton had knowledge Plaintiff was consistently engaging in protected activity from 2016 up until his FMLA leave. This action by Dr. Horton to terminate Plaintiff is considered an adverse

9

*Plaintiff's First Amended Complaint*

action under Title VII. Plaintiff alleges more than temporal proximity as it relates to causation based on the allegations of continuous retaliatory acts (not discrete acts) that occurred, and Dr. Horton was aware of, which ultimately led up to the decision to terminate Plaintiff's employment.

45. Defendant could not have reasonably believed that retaliation in Plaintiff's employment was proper at the time the alleged incidents took place in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

## DAMAGES

46. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## ATTORNEY'S FEES

47. Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of KENNARD LAW, PC, 5120 Woodway Dr., Suite 10010, Houston, Texas 77056 in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

## XII.  JURY DEMAND

48. Plaintiff hereby re-states his request for a jury trial.

## XIII.  PRAYER

49. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant

for:

    a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint;

    b. Compensatory damages, including, but not limited to, emotional distress;

    c. Past, present, and future physical pain and mental suffering;

    d. Punitive damages;

    e. Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

    f. Pre-judgment interest at the highest rate permitted by law;

    g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    h. Costs of Court; and

    i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District No: 713316
Email: Alfonso.Kennard@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston, TX  77056
Telephone No.: (713) 742-0900
Facsimile No.: (832) 558-9412
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

*Plaintiff's First Amended Complaint*

**OF COUNSEL FOR PLAINTIFF:**



_____
Eddie Hodges
Texas Bar No. 24116523
Southern District No. 3479748
PRO HAC VICE
Email: Eddie.Hodges@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston, TX  77056
Telephone No.: (713) 742-0900
Facsimile No.: (832) 558-9412

*Plaintiff's First Amended Complaint*